IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAUREN MONES,
Plaintiff,

v. Case No. __________________

JULIE MARCUS, in her official capacity as
Pinellas County Supervisor of Elections; and
DUSTIN CHASE, an employee of the
Pinellas County Supervisor of Elections,
in his individual capacity,
Defendants.
_________________________________________/

## COMPLAINT

Plaintiff, LAUREN MONES ("Plaintiff"), by and through undersigned counsel, sues Defendants JULIE MARCUS, solely in her official capacity as Pinellas County Supervisor of Elections, and DUSTIN CHASE, in his individual capacity, and alleges as follows:

## INTRODUCTION

Plaintiff Lauren Mones, a registered voter in Pinellas County, was meeting with an employee in the Supervisor's main lobby area when he suddenly became angry that she was lawfully recording him. The meeting and recording were in the main lobby, outside any polling room or designated early voting area where Florida law restricts photography. He then ordered her to stop recording and leave, caused her to be trespassed from the property, and set in motion her arrest—all because she was recording government activity.

Her removal was made in violation of clearly established law, as courts have long recognized a First Amendment right to record government officials performing public duties on public property. *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000). The Supervisor's office has no written or lawfully established policy prohibiting of limiting the usage of a recording device. The trespass was imposed solely because the employee was annoyed and frustrated by the prospect of being recorded by a member of the public.

Plaintiff brings this action under 42 U.S.C. § 1983 to hold Defendants accountable for this unconstitutional retaliation and to prevent the government from using the same unlawful practice to suppress protected First Amendment activity in the future.

**PARTIES**

9. Plaintiff Lauren Mones is a registered voter and resident of Pinellas County, Florida.
10. Defendant Julie Marcus is the Pinellas County Supervisor of Elections. She is sued solely in her official capacity. The official-capacity claim is a claim against the Supervisor of Elections office and seeks relief for its policy, custom, practice, or decision of a final policymaker; it is not based on respondeat superior.
11. Defendant Dustin Chase was, at all relevant times, an employee, agent, or authorized representative of the Pinellas County Supervisor of Elections. Chase acted under color of Florida law. Chase is sued only in his individual capacity.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

13. This Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and equitable relief under 42 U.S.C. § 1983 and the Court's inherent equitable authority.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)-(2) because Defendants reside in this District and the events giving rise to the claims occurred in Pinellas County, Florida, within the Tampa Division.

## FACTUAL ALLEGATIONS

**A. Plaintiff recorded government activity from outside any polling room or early voting area.**

15. August 18, 2026, was Primary Election Day in Pinellas County.

16. That morning, Plaintiff visited her precinct to vote and was told she was not registered as a Republican. She then drove to the Pinellas County Election Service Center and was granted a meeting with an employee to discuss the issue. The meet took place entirely in the lobby of the building.

17. Plaintiff peacefully used a cell phone to document the conversation, including the conduct of election officials and election administration.

18. Plaintiff recorded from a publicly accessible area on public property.

19. Plaintiff was not in the actual room in which ballots were being cast.

20. Plaintiff was not in any area designated for early-voting activities, including any early-voter line, check-in area, processing area, or ballot-casting area.

21. Plaintiff was not photographing another elector's ballot, interfering with a voter, disrupting official business, threatening safety, blocking ingress or egress, or impeding election administration.

22. Plaintiff remained peaceful and non-disruptive.

23. There was no posted or written building-wide policy prohibiting photography in the public area where Plaintiff stood.

24. No Defendant identified a neutral, generally applicable time, place, or manner restriction tailored to an actual operational or privacy concern in that area.

**B. Defendant Chase targeted Plaintiff because she was recording.**

26. Defendant Chase observed or learned that Plaintiff was recording public officials or public business.

27. Defendant Chase directed Plaintiff to stop recording and/or leave because Plaintiff was recording.

28. Defendant Chase asserted, expressly or through communications to law enforcement, that section 102.031(5), Florida Statutes, prohibited Plaintiff's recording.

29. That assertion misstated the statute because the statute prohibits photography only in a polling room or early voting area, and Plaintiff was in neither.

30. Defendant Chase knew, or a reasonable election official responsible for applying election law would have known, the boundaries of the polling room or early voting area and that Plaintiff was outside them.

31. Defendant Chase did not direct Plaintiff to a lawful alternative filming location, identify a valid written rule, or narrowly address any specific disruption. Chase instead conditioned Plaintiff's continued presence in the public area on surrendering her right to record.

32. Defendant Chase withdrew Plaintiff's permission to remain, requested or procured a trespass warning, contacted or caused others to contact law enforcement, and requested or caused Plaintiff's removal and arrest.

33. Defendant Chase's actions were taken under asserted governmental authority and were intended to stop, punish, and deter Plaintiff's recording.

**C. THE STATED RECORDING RATIONALE LED DIRECTLY TO PLAINTIFF'S ARREST**

34. Largo Police Officer Tyler Sinni responded to the Election Service Center.

35. The elections employees repeated or communicated their demand that Plaintiff leave because she was recording and their assertion that her recording violated section 102.031(5), Florida Statutes.

36. Plaintiff voluntarily accompanied law enforcement outside of the Election Service Center and exited the building without resistance. Plaintiff was outside the building when the final trespass warning was issued and when she was subsequently placed under arrest.

37. Notwithstanding that Plaintiff had voluntarily exited the building and was outside the Election Service Center when the final trespass warning and arrest occurred, Plaintiff was arrested for trespass in a structure or conveyance after warning under section 810.08(2)(b), Florida Statutes.

38. The arrest affidavit, report number 26-006977 and court case number 26-10832-MM-1, states that employees asked Plaintiff to leave "due to actively recording in the polling room or early voting area of the location, violating F.S.S. 102.031(5)."

39. Thus, on the government's own account, Plaintiff's protected recording was the reason elections employees ordered her to leave and set the trespass-and-arrest sequence in motion.

40. Plaintiff alleges that the affidavit's location characterization was false: she was not recording in a polling room or early voting area.

41. No objectively reasonable basis existed to believe Plaintiff violated section 102.031(5).

42. To the extent the arrest was premised on refusal to obey the recording-based departure order, the chain of events was manufactured by the retaliatory withdrawal of access and the deliberate misstatement of section 102.031(5).

43. Plaintiff further alleges, on information and belief, that persons who remain in publicly accessible portions of the Election Service Center while engaging in comparable non-disruptive conduct, but who do not record officials are not ordinarily ordered to leave, trespassed, or arrested.

44. The arrest, detention, booking, criminal charge, bond, exclusion from the Election Service Center, and threat of renewed enforcement would deter a person of ordinary firmness from recording public officials or gathering information about election administration.

45. Plaintiff suffered loss of liberty, emotional distress, humiliation, reputational harm, out-of-pocket loss, interference with protected newsgathering and oversight activity, and other damages.

**D. Policy, custom, practice, or final-policymaker decision.**

47. The Supervisor of Elections is responsible for administering the office, controlling access to its facilities, training and supervising its employees,defining any early voting area, and directing or authorizing rules governing recording at the Election Service Center.

48. On information and belief, the Supervisor, acting through a final policymaker or delegated final decisionmaker, maintained, adopted, ratified, or enforced the policy, custom, or practice of treating photography anywhere within the Election Service Center, or within public areas beyond the actual statutory boundaries, as prohibited by section 102.031(5).

49. The policy or practice was not a written, published, properly bounded time, place, and manner rule. Its unwritten or ad hoc character increased the risk of arbitrary and retaliatory enforcement.

50. Alternatively, the challenged action was a deliberate decision by the official responsible for final policy concerning access, photography, and enforcement at the Election Service Center on Election Day.

51. Elections employees invoked the office's authority, acted as the owner's authorized representatives, and caused the police to enforce the office's demand through a trespass warning and arrest.

52. The office's stated basis for removal was not misconduct independent of speech; it was Plaintiff's recording itself. It was her protected action and conduct.

53. The policy, custom, practice, final-policymaker decision, or ratification was the moving force behind the deprivation of Plaintiff's First Amendment rights.

54. The absence of a written policy does not eliminate official-capacity liability where an unwritten custom, delegated final decision, or ratified decision caused the violation.

55. The continuing threat that the same rule will be enforced against Plaintiff during future election administration, canvassing, audits, recounts, or other public business creates an ongoing chilling effect and a real need for prospective relief.

**COUNT I**
**FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983**
**Against Defendant Chase in His Individual Capacity**

56. Plaintiff incorporates paragraphs 1 through 55.

57. Plaintiff engaged in activity protected by the First Amendment when she peacefully photographed or recorded public officials and matters of public interest on public property, outside any polling room or early voting area.

58. *Smith v. City of Cumming* clearly established in this Circuit that, subject to reasonable time, place, and manner restrictions, the First Amendment protects photographing or videotaping official conduct, gathering information about what public officials do on public property, and recording matters of public

interest. 212 F.3d at 1333. Smith relied in part on *Blackston v. Alabama*, which recognized a protected interest in filming public meetings. 30 F.3d 117, 120 (11th Cir. 1994).

59. Defendant Chase took adverse action by ordering Plaintiff to stop recording or leave, withdrawing her authorization to remain, procuring a trespasswarning, causing or requesting police intervention and arrest, and excluding her from the government facility.

60. Those actions would deter a person of ordinary firmness from exercising First Amendment rights.

61. Plaintiff's recording was a substantial or motivating factor and abut-for cause of Defendant Chase's actions. The temporal connection was immediate, and the arrest affidavit expressly states that employees demanded Plaintiff leave "due to" her recording.

62. Defendant Chase lacked a lawful, nonretaliatory basis for the challenged actions. Section 102.031(5) did not apply where Plaintiff stood, and Plaintiff was not disruptive.

63. Any purported restriction was unreasonable as applied, untethered to the statutory boundaries, not narrowly tailored, and enforced because of Plaintiff's protected activity.

64. Defendant Chase acted intentionally, knowingly, recklessly, or with callous indifference to Plaintiff's clearly established First Amendment rights.

65. Defendant Chase's conduct was not objectively reasonable and is not protected by qualified immunity because Smith gave fair warning that

government officials may not prevent peaceful recording of official conduct on public property absent a valid restriction, and no reasonable elections employee could believe section 102.031(5) imposed a building-wide ban outside a polling room or early voting area.

66. As a direct and proximate result, Plaintiff suffered the injuries described above.

**WHEREFORE**, Plaintiff requests judgment against Defendant Chase individually; compensatory and nominal damages; punitive damages against Chase; reasonable attorney's fees and costs under 42 U.S.C. § 1988; prejudgment andpost judgment interest; and all other appropriate relief.

**COUNT II**
**FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983**
**Policy, Custom, Practice, or Final-Policymaker Decision**
**Against Julie Marcus in Her Official Capacity as Pinellas County Supervisor of Elections**

67. Plaintiff incorporates paragraphs 1 through 55.

68. Plaintiff engaged in protected First Amendment activity for the reasons stated in Count I.

69. The office, through its employees and authorized representatives, took adverse action by imposing and enforcing a recording-based departure order, trespass warning, removal, arrest, and exclusion.

70. The adverse action would deter a person of ordinary firmness from exercising First Amendment rights and was caused by Plaintiff's recording.

71. The official-capacity Defendant is liable because the constitutional injury was caused by one or more of the following, pleaded in the alternative and subject to confirmation through discovery:

a. An official policy construing section 102.031(5) as prohibiting photography beyond the statutory polling room or early voting area;

b. A widespread or settled custom or practice of prohibiting recording throughout the Election Service Center or in publicly accessible areas;

c. A deliberate decision by an official with final policymaking authority over facility access, recording, election-site boundaries, and enforcement;

d. Delegation of final authority to the employee who issued or approved the recording-based exclusion and trespass demand; and/or

e. Knowing approval or ratification of the unconstitutional basis for Plaintiff's exclusion and arrest after the decision and its stated rationale were communicated to supervisory officials.

72. This policy, custom, practice, delegated decision, final-policymaker decision, or ratification was the moving force behind the constitutional deprivation.

73. The office's failure to publish a lawful, bounded recording rule, coupled with its affirmative use of a materially incorrect statutory interpretation to trigger trespass enforcement, reflects deliberate choice rather than mere negligence.

74. The policy or practice is unconstitutional as applied to peaceful recording in public areas outside a polling room or early voting area and permits enforcement based on protected expression rather than disruption or another valid operational concern.

75. Plaintiff has been injured and faces an ongoing credible threat of the same policy being applied when she seeks to record future official election activity.

WHEREFORE, Plaintiff requests judgment against Defendant Marcus in her official capacity; a declaration that Defendants violated Plaintiff's First Amendment rights; preliminary and permanent injunctive relief barring enforcement of a photography prohibition beyond a polling room or properly designated early voting area against peaceful, non-disruptive recording, subject to lawful and reasonable time, place, and manner restrictions; compensatory and nominal damages; reasonable attorney's fees and costs under 42 U.S.C. § 1988; prejudgment andpost judgment interest; and all other appropriate relief.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor on both counts;

B. Declare that Defendants' recording-based exclusion, trespass directive, and procurement of Plaintiff's arrest violated the First Amendment;

C. Declare that section 102.031(5), Florida Statutes, does not prohibit photography outside a polling room or early voting area as those terms are defined by Florida law;

D. Preliminarily and permanently enjoin the official-capacity Defendant and persons acting in concert with her from enforcing a building-wide or extra-statutory photography prohibition against Plaintiff in publicly accessible areas, while permitting lawful, reasonable, content-neutral time, place, and manner restrictions;

E. Award compensatory damages in an amount to be determined at trial;

F. Award nominal damages;

G. Award punitive damages against Defendant Chase individually;

H. Award reasonable attorney's fees and costs under 42 U.S.C. § 1988;

I. Award prejudgment andpost judgment interest; and

J. Grant such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**Dated**: August 26th, 2026

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1ST AVENUE
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com

*/s/ Gavin B. Rollins*
GAVIN B. ROLLINS, ESQ.
FL BAR No. 1064417
gavin@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st AVENUE
MOUNT DORA, FL 32757
T: (352)-328-4892

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished this 26th day of August, 2026 via email to all parties of record.

*/s/ Anthony F. Sabatini*